UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-02547-SVW-AS | Date | February 7, 2017 |
|---|---|---|---|
| Title | *Jerome Dahan v. Sussman Shank, LLP; John Schwimmer* | | |

Present: The Honorable  STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:** IN CHAMBERS ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [26].

### I. INTRODUCTION

Plaintiff Jerome Dahan brings this action against the law firm of Sussman Shank and one of its lawyers, John Schwimmer (collectively, "the Defendants") for legal malpractice, breach of fiduciary duty, and breach of contract. The claims involve the representation of the Plaintiff by the Defendants in a civil action by the Plaintiff against J.P. Morgan. The Plaintiff alleges that the Defendants' conduct fell below the standard of care for failing to introduce a critical piece of evidence during trial, for failing to make a critical argument during closing arguments, and for generally overbilling the Plaintiff. The Plaintiff alleges that he lost the trial against JPMorgan as the result of these mistakes.

Presently before the Court is the Defendants' Motion for Summary Judgment. Importantly, the Defendants contend that they are entitled to summary judgment on all of the Plaintiff's claims because the case is time-barred under California Civil Procedure § 340.6, and therefore the whole case against them should be barred. Additionally, the Defendants argue that even if the action is not time-barred, the Plaintiff cannot establish the necessary elements of each of his causes of action. For the following reasons, the Motion is GRANTED in part and DENIED in part. The Court finds that there is a question of fact remaining on the statute of limitations issue, and therefore the Court cannot find as a matter of law that the Plaintiff's claims are time-barred. However, the Court does find that the mistakes allegedly made by the Defendants at trial do not constitute actionable malpractice and cannot

:
Initials of Preparer
PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-02547-SVW-AS | Date | February 7, 2017 |
|---|---|---|---|
| Title | *Jerome Dahan v. Sussman Shank, LLP; John Schwimmer* | | |

form the basis of liability. Additionally, the Court notes that the Plaintiff abandoned certain theories of malpractice in his Opposition, and thus the Plaintiff is prevented from relying on those theories at trial. As a result of these findings, only the Plaintiff's general overbilling claims will go forward.

## II. FACTUAL AND PROCEDURAL BACKGROUND

This case originates with the Defendants representation of the Plaintiff in a prior litigation. In 2005, Mr. Dahan opened two investment accounts with J.P. Morgan Chase Bank, N.A. ("JPM"), at the suggestion of Gary Freedman, the Plaintiff's attorney and business advisor. Motion for Summary Judgment ("MSJ"), Ex. 14, Trial Transcript ("TT"), 9/26/14, 112:8-113:23. For each account, the Plaintiff signed an application in which he acknowledged he had been given JPM's General Terms for Accounts and Services (the "General Terms"), promised he would read them, and further agreed to ask questions about them, if he had any. *Id.* at 125:6-127:15. The General Terms authorized JPM to act on the Plaintiff's behalf "even though [JPMorgan] may have a potential conflict of duty or interest in a transaction." Declaration of John Schwimmer, Dkt. 26, ¶ 4, Ex. 1, General Terms Document ("General Terms"), p. 40, § 3.

In 2007, JPM purchased seven long-term bonds for Mr. Dahan's managed account, which JPM also either underwrote or owned. TT, 9/25/14, 45:19-51:18. When the Plaintiff was told about these bonds by Mr. Freedman, he ended his business relationship with JPM and moved his investments to another firm, which sold the seven bonds in 2012 for a $1.7 million loss. TT, 9/25/14, 254:6-256:26.

In February 2012, the Plaintiff, through Mr. Freedman, hired the law firm of Sussman Shank ("Sussman") to represent him in an action against JPM and two of the Plaintiff's JPM account managers. Defendant Schwimmer, a lawyer at the firm, served as lead attorney on the case. Schwimmer Decl. at ¶ 3. In April of 2012, Sussman, with Mr. Freedman as co-counsel, filed a complaint on the Plaintiff's behalf against JPM and the account managers. Mr. Freedman had the final word on strategic decisions throughout the proceedings. Schwimmer Decl. at ¶ 5.

The causes of action in the original case included claims for fraud, breach of fiduciary duty, negligence, and breach of contract. The causes of action were based on allegations that JPM engaged in self-dealing and conflicts of interest when it invested Mr. Dahan's money because it owned or

:

Initials of Preparer      PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-02547-SVW-AS | Date | February 7, 2017 |
|---|---|---|---|
| Title | *Jerome Dahan v. Sussman Shank, LLP; John Schwimmer* | | |

underwrote the seven bonds at issue, leading to approximately $1.7 million in losses. Schwimmer Decl. at ¶ 6, Ex. 2.

    As part of the proceedings, the parties engaged in significant discovery. On November 19, 2014, after the close of discovery, Mr. Schwimmer discovered a document online filed by JPMorgan Investment Management ("JPMIM") with the SEC in 2013: Form ADV Part 2. Section 4.B of the document stated that, as a provider of discretionary and non-discretionary investment management services, JPMIM had "obligations to disclose … all material conflicts between our interests and [customers' interests]." This was defined to include circumstances where JPMIM received "additional compensation" as a result of its relationship with its customers or where it engaged in transactions "for [JPMIM's] own account when we act in advisory capacity." Mr. Freedman decided to use the document for impeachment at trial rather than submitting it in support of a motion to compel further document production from JPM. Schwimmer Decl. at ¶ 8, Ex. 3, Form ADV Part 2, 1.

    In the weeks leading up to the September 2014 trial, Mr. Schwimmer raised the issue of utilizing a second chair at trial with Mr. Freedman. Mr. Freedman proposed hiring a local Los Angeles attorney, whose hourly rate was similar to Mr. Schwimmer's, but Mr. Schwimmer convinced Mr. Freedman to allow him to use a Sussman associate who had already done some work on the case. Schwimmer Decl. at ¶ 9, Ex. 4. The associate attended trial and provided support to Mr. Schwimmer, including noting witness testimony, tracking exhibits, legal research, and preparation of jury instructions, briefs, trial exhibits, and other documents, among other duties. The associate's hourly rate for services on the case was $295, and over the course of 2 weeks of trial he billed approximately 118 hours of work on the case. Schwimmer Decl. at ¶ 10, Ex. 5; Burdett Decl., ¶¶ 3-6.

    Trial began on September 22, 2014. Mr. Freedman remained co-counsel but also testified as a fact witness on behalf of the Plaintiff. Although he did not sit at counsel table, he attended trial and provided comments throughout the trial. Schwimmer Decl. at ¶¶ 11-12.

    After the conclusion of trial proceedings, the jury returned a 9-3 special verdict of JPM. Schwimmer Decl. at ¶ 30, Ex. 18. Following the conclusion of the trial, Sussman continued to work on the case, including filing post-trial motions and working on the appeal. By December 31, 2014, Sussman calculated that the Plaintiff owed them more than $468,000. *Id.* at ¶ 31, Ex. 20. The final legal services performed by Sussman on the JPM case were on January 29, 2015. *Id.* at ¶ 32, Ex. 21.

                                                                                                                :

Initials of Preparer      PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-02547-SVW-AS | Date | February 7, 2017 |
|---|---|---|---|
| Title | *Jerome Dahan v. Sussman Shank, LLP; John Schwimmer* | | |

On February 9, 2015, Mr. Freedman, on behalf of the Plaintiff, instructed Mr. Schwimmer to send the case file to another law firm. Schwimmer Decl. at ¶ 33, Ex. 22. Sussman's final billing entry was February 12, 2015, related to the transfer of the files. *Id.* at ¶ 34, Ex. 21. Mr. Schwimmer prepared and sent a transfer memo to the new attorney on February 24, 2015, enclosing all of the case files, other than attorney work product. *Id.* at ¶ 35, Ex. 23.

On appeal, the Plaintiff's new attorneys argued that the trial court erred in denying judicial notice of Form ADV. The Court of Appeal rejected the argument, finding that Form ADV was not relevant to the case because it was issued after the transactions in question, among other reasons. Request for Judicial Notice ("RJN"), Ex. 24, p. 5. Additionally, the Court of Appeal acknowledged that JPM's Conflicts of Interest Policy was introduced into evidence through other testimony, and that because the jury was instructed on fiduciary duties and breaches, any error to admit the form was harmless. *Id.*

Finally, on March 2, 2016, the Plaintiff filed the present lawsuit in Los Angeles County Superior Court, which was subsequently removed to this Court. The Defendants filed counterclaims in order to recover the attorneys' fees that were not paid by the Plaintiffs. Dkt. 12.

The Plaintiff's claims in this matter are based on three aspects of Sussman's representation of the Plaintiff at trial. First, Mr. Schwimmer was unable to admit Form ADV into evidence. He requested the judge to take judicial notice of the form and asked JPM employees about the form, but the Court denied the request based on relevance and prejudice grounds, while none of the JPM employees could authenticate the document. Schwimmer Decl. at ¶ 13, Ex. 7; *id.* at Ex. 8, TT, 9/23/14, p. 59:10-20; *id.* at ¶ 15, Ex. 9, TT, 9/24/14, pp. 124:24-125:1. Mr. Schwimmer emphasized to the court the importance of Form ADV, but the court found it inadmissible based on lack of foundation and prejudice. Schwimmer Decl. at ¶ 18, Ex. 11, TT, 9/29/14, p. 100, 12-22. However, although Form ADV was never admitted, Mr. Schwimmer established JPM's understanding of its fiduciary duty to the Plaintiff through other witness testimony and documented evidence. *Id.* at ¶ 19, Ex. 8, TT, 9/23/14, p. 8:11-18; 13:5-16; 30:23-31:3; *id.* at Ex. 9, TT, 9/24/14, p. 51:24-53:12; *id.* at ¶ 20, Ex. 12, TT, 9/25/14, p. 6:4-14.

The second basis of the malpractice claims against Sussman and Mr. Schwimmer was the closing argument given by Mr. Schwimmer. JPM's defense hinged on the General Terms document it alleged the Plaintiff had received when he opened his account in 2005, as it appeared to authorize JPM to act on

:
_____

Initials of Preparer  PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-02547-SVW-AS | Date | February 7, 2017 |
|---|---|---|---|
| Title | *Jerome Dahan v. Sussman Shank, LLP; John Schwimmer* | | |

the Plaintiff's behalf even if there was a potential conflict of interest. JPM argued that even if the Plaintiff had not received the General Terms when he opened his account, the General Terms were incorporated by reference in his account opening documents. Schwimmer Decl. at ¶ 21, Ex. 13, TT, 9/22/14, p. 30:3-18; Ex. 17, TT, 9/3014, p. 71:16-72:28. Thus, this incorporation by reference argument became a central issue concerning whether the General Terms applied.

At closing argument, Mr. Schwimmer examined the incorporation by reference issue. He sent Mr. Freedman drafts of his closing argument outlines, and in constructing those arguments, Mr. Freedman and Mr. Schwimmer had to accommodate a strict time limit for closing arguments set by the trial judge. Schwimmer Decl. at ¶¶ 25-26, Exs. 15, 16. Shortly before the closing arguments were set to begin, the judge instructed the parties on the language that would be used in the jury instructions regarding incorporation by reference, including the three elements the jury would need to find in order to find the General Terms were incorporated into the Plaintiff's agreement with JPM.[1] Mr. Schwimmer then presented Plaintiff's closing argument. The Plaintiff alleges that Mr. Schwimmer did not utilize the elements included in the incorporation by reference jury instruction explicitly enough when presenting his closing argument, although he did touch on each element of the instruction. Schwimmer Decl. at ¶ 28, Ex. 17, TT, 9/30/14, pp. 49:1-55:4.

The third aspect of the malpractice claim against Sussman brought by the Plaintiff is that Sussman overbilled him for its representation in this matter, as the accumulated fees were out of proportion to the $1.7 million that was at stake in the litigation. Further, decisions made by Sussman during the litigation, such as utilizing a second chair at trial and the amount of hours spent on certain tasks, improperly increased the fees owed by the Plaintiff. Therefore, the Plaintiff alleges that Sussman committed malpractice and a breach of fiduciary duty in their billing practices.

### III. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial

---

[1] The Court instructed the jury that the terms of an extrinsic document may be incorporated by reference in a contract so long as: 1) the reference is clear and unequivocal; 2) the reference is called to the attention of the other party and he consents thereto; and 3) the terms of the incorporated document are known or easily available to the parties. Schwimmer Decl. at ¶ 27, TT, 9/30/14, pp. 5:17-7:17.

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-02547-SVW-AS | Date | February 7, 2017 |
|---|---|---|---|
| Title | *Jerome Dahan v. Sussman Shank, LLP; John Schwimmer* | | |

responsibility of informing the court of the basis of its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining a motion for summary judgment, all reasonable inferences from the evidence must be drawn in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Id.* at 248. However, no genuine issue of fact exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

It is not the Court's task "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1278 (9th Cir. 1996). Counsel have an obligation to lay out their support clearly. *Carmen v. San Francisco Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

### IV. DISCUSSION

The Defendants' arguments for summary judgement are straightforward. First, they argue that the Plaintiff's entire action is time-barred under the statute of limitations contained in California Code of Civil Procedure § 340.6. Second, they argue that the Plaintiff has not demonstrated the necessary elements of any of his causes of action, including a lack of evidence of a breach of duty by the Defendants and that those breaches caused the Plaintiff's loss at trial. While the Court finds that a question of fact prevents a grant of summary judgment on the statute of limitations issue, it also finds that the Defendants did not breach their duty of care to the Plaintiff during their performance during the trial.[2] Therefore, the only claims moving forward in this matter are those related to the Defendants' alleged overbilling of the Plaintiff.

#### A. Statute of Limitations

The Defendants first argue that the Plaintiff's entire case is time-barred by the statute of limitations for malpractice claims in California, which precludes claims for malpractice that are brought

---

[2] The Plaintiff has chosen not to argue that the Defendants breached their duty of care in all of the ways he originally alleged in the Complaint. The Court will specify in this Order which malpractice theories the Plaintiff has apparently abandoned.

Initials of Preparer       PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-02547-SVW-AS | Date | February 7, 2017 |
|---|---|---|---|
| Title | *Jerome Dahan v. Sussman Shank, LLP; John Schwimmer* | | |

more than one year after the termination of legal services. However, the Court finds that there are genuine disputes of material fact that prevent the Court from granting summary judgment to the Defendants on the statute of limitations issue.

The California statute of limitations for legal malpractice claims is set forth in C.C.P. § 340.6:

(a) An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission …. [I]n no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist: …
(2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred.

The Plaintiff does not dispute that his claims are governed by the statute of limitations for legal malpractice contained in § 340.6. Where the plaintiff's injury is suffered by reason of an attorney's professional negligence, the gravamen of that claim is legal malpractice. *Jackson v. Rogers & Wells*, 210 Cal.App.3d 336, 346 (1989). Additionally, the Plaintiff suffered the relevant injury when he lost the trial, which occurred on October 2, 2014. The one year limitations period began to run on that date, as the filing of an appeal does not toll the running of the statute. *See, e.g., Pompilio v. Kosmo, Cho & Brown*, 39 Cal.App.4th 1324, 1328 (1995). However, the Plaintiff filed his Complaint on March 2, 2016. Complaint, Dkt. 1 ("Complaint"). Thus, it is further undisputed that the Plaintiff filed his Complaint more than one year after the entry of adverse judgment and the time when the statute of limitations began to run on October 2, 2014. As a result, the narrow statute of limitations issue currently before the Court is whether the limitations period was tolled at least until March 2, 2015, which would make the Plaintiff's claims timely.

Although C.C.P. § 340.6(a) contains four potential tolling provisions, only subsection arguably (2) applies to the current action. This subsection provides that the limitations period will be tolled during the time that "[t]he attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred." C.C.P. § 340.6(a)(2). Thus, the determining factor in the statute of limitations analysis is when the Defendants' representation of the

:

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-02547-SVW-AS | Date | February 7, 2017 |
|---|---|---|---|
| Title | *Jerome Dahan v. Sussman Shank, LLP; John Schwimmer* | | |

Plaintiff ended.

For the purposes of § 340.6(a)(2), the attorney continues to represent the client so long as "the client actually and reasonably believes that the representation is continuing." *Gonzalez v. Kalu*, 140 Cal.App.4th 21, 31 (2006). The question of representation should be viewed from the perspective of the client, and the end date of representation can be identified when the client "act[s] to end the attorney-client relationship." *Hensley v. Caietti*, 13 Cal.App.4th 1165, 1172-73 (1993). Such an action by the client may include formally substituting the attorney out as counsel. *Shaoxing City Maolong Wuzhong Down Products, Ltd. v. Keehn & Associates, APC*, 238 Cal.App.4th 1031, 1039 (2015). However, the client's subjective beliefs are not the focus of the end date analysis; instead, courts objectively examine "'evidence of an ongoing mutual relationship and of activities in furtherance of the relationship.'" *Truong v. Glasser*, 181 Cal.App.4th 102, 115 (2009) (quoting *Worthington v. Rusconi*, 29 Cal.App.4th 1488, 1498 (1994)).

The central dispute in the present case is whether the Plaintiff acted to end the attorney-client relationship when he, through his agent Mr. Freedman, directed Sussman to forward the JPM case file to another attorney on February 9, 2015. The Defendants contend that this demand by the Plaintiff ended the relationship and that the limitations period ceased to toll at that point. Therefore, the Plaintiff's claims became time-barred on February 9, 2016, before the Plaintiff filed his case on March 2, 2016. On the other hand, the Plaintiff contends that the end of the attorney-client relationship did not occur until the formal substitution of counsel occurred on March 25, 2015, meaning that the limitations period did not end until March 25, 2016, after he filed his Complaint. The Plaintiff argues that until that date the parties were still trying to find a way to preserve the relationship.

The Court now finds that there is a question of fact regarding whether the attorney-client relationship ended when the Plaintiff asked the Defendants to forward the case file on February 9, 2015. The request to transfer the case file is not sufficient on its own to demonstrate as a matter of law that the Plaintiff acted to end the attorney-client relationship. *See, e.g., Worthington*, 29 Cal.App.4th at 1497-98 (finding that consulting with another attorney did not end the attorney-client relationship when the client did not manifest a desire to end the representation). The Defendants have submitted additional emails suggesting that the transfer of the case file marked the end of the relationship between the Plaintiff and the Defendant. Dkt. 32, Exs. 1, 3-4. While this supporting evidence would otherwise be sufficient to demonstrate that the Plaintiff acted to end the relationship when Mr. Freedman

:

Initials of Preparer      PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-02547-SVW-AS | Date | February 7, 2017 |
|---|---|---|---|
| Title | *Jerome Dahan v. Sussman Shank, LLP; John Schwimmer* | | |

requested the case file to be transferred, Mr. Freedman has stated that the parties continued to discuss Mr. Schwimmer handling the appeal of the case on a contingency basis. Supplementary Declaration of Gary Freedman, Dkt. 34 ("Supp. Freedman Decl."), ¶ 5. While the Court acknowledges that Mr. Freedman's subjective beliefs are not sufficient to defeat the Defendants' Motion for Summary Judgment on the statute of limitations issue, his testimony regarding ongoing discussions surrounding the Defendants handling the appeal of the case is relevant and admissible evidence of an ongoing mutual relationship and of activities in furtherance of the relationship. *See Truong*, 181 Cal.App.4th at 115. Such evidence is properly considered in an objective analysis of the ongoing attorney-client relationship, and therefore the Court finds that a rational jury might decide that the relationship extended until the Defendants were formally substituted out as counsel because the parties continued to discuss the Defendants' handling of the upcoming appeal. As a genuine dispute of material fact exists regarding whether the Plaintiff and Defendants had an ongoing attorney-client relationship, a jury must make the determination of when that relationship ended. Thus, the Motion for Summary Judgment is DENIED with regards to the statute of limitations issue.

### B. Legal Malpractice Related to Trial Performance

In their Motion for Summary Judgment, the Defendants further contend that even if the Plaintiff's claims are not time-barred, he fails to establish the necessary elements of each of his causes of action. In the initial Complaint, the Plaintiff's malpractice claims involving the Defendants' negligence at trial focused on the Defendants' failure to get Form ADV admitted into evidence and their failure to effectively argue against incorporation by reference of the General Terms in closing arguments. In his Opposition to the Motion for Summary Judgment, the Plaintiff focuses on the closing arguments issue and apparently abandons his claims involving Form ADV. Opposition, Dkt. 30 ("Opp."), p. 17. Therefore, the Defendants are entitled to summary judgment on the Plaintiff's claims involving Form ADV. The Court will now turn its attention to the Plaintiff's allegations of malpractice involving the Defendants' closing argument and whether they breached the relevant standard of care by failing to make the proper arguments at closing.

"The elements of a cause of action for attorney malpractice are: (1) the duty of the attorney to use such skill, prudence and diligence as members of the profession commonly possess; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage." *Schultz v. Harney*, 27 Cal. App. 4th 1611, 1621 (1994) (citing *Jackson v. Johnson*, 5

:
_____ _____

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-02547-SVW-AS | Date | February 7, 2017 |
|---|---|---|---|
| Title | *Jerome Dahan v. Sussman Shank, LLP; John Schwimmer* | | |

Cal.App.4th 1350, 1355 (1992)). The Plaintiff must demonstrate each of these elements to be entitled to damages for attorney malpractice. In the present case, the Defendants contend that the Plaintiff both cannot show a breach of duty or a proximate causal connection between the breach and resulting injury.

At trial, JPM argued that the General Terms were "incorporated by reference" into the agreement between JPM and the Plaintiff. The Plaintiff contends that the Defendants failed to properly argue both the law and the evidence regarding the incorporation by reference issue. Specifically, the Defendants failed to specifically reference the elements required to find incorporation by reference.[3] Additionally, the Defendants failed to bring to the jury's attention that the General Terms were not called to the Plaintiff's attention, an essential element of incorporation by reference. Opp. at 17. Although the Plaintiff concedes that the Defendants addressed the General Terms in their closing arguments, he argues that the Defendants focused on arguments that failed to "move the ball" instead of making the basic point that JPM failed to satisfy the elements of incorporation by reference. *Id.* at 17-18.

An attorney "is not liable for an informed tactical choice within the range of reasonable competence," even if that choice appears to be a mistake in hindsight. *Barner v. Leeds*, 24 Cal.4th 676, 690 (2000); *see also Kirsch v. Duryea*, 21 Cal.3d 303, 309-11 (1978). The Court now finds that the Defendants' closing arguments qualify as such an informed tactical choice, and the Defendants are entitled to summary judgment on the Plaintiff's claims involving the closing arguments.

It is not disputed that Mr. Schwimmer carefully considered how to present the closing argument. He prepared a 17-page outline, of which nearly 25% was devoted to the incorporation by reference issue. Schwimmer Decl. at ¶ 26. The outline was provided twice to Mr. Freedman, the Plaintiff's agent. *Id.* Importantly, although Mr. Schwimmer did not repeat the elements of incorporation by reference verbatim, he did argue that JPM failed to establish that the General Terms were incorporated by reference. The Plaintiff asserts that Mr. Schwimmer never told the jury that JPM failed to call the General Terms to the Plaintiff's attention, the second element of incorporation by reference, yet Mr. Schwimmer stated in closing arguments, "J.P. Morgan didn't give Mr. Dahan the General Terms document in connection with the opening of his investment management account. How can a document apply to an account that hasn't even been opened yet? Isn't a contract supposed to be the

---

[3] The three elements of incorporation by reference are: (1) a "clear and unequivocal" reference, in a signed document, to the incorporated document; (2) the reference was called to the attention of the party and he consented to it; and (3) the incorporated terms were known or easily available to the party.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-02547-SVW-AS | Date | February 7, 2017 |
|---|---|---|---|
| Title | *Jerome Dahan v. Sussman Shank, LLP; John Schwimmer* | | |

product of mutual consent rather than what can I speak [sic] into a document that you'll never notice?" *Id.* at ¶ 28, Ex. 17, TT, 9/30/14, p. 52:21-28.

As a result, the Court finds that the Defendants' conduct during closing arguments did not breach the duty of care they owed to the Plaintiff. It is undisputed that Mr. Schwimmer prepared diligently for the arguments. The heart of the Plaintiff's contention is that Mr. Schwimmer should have referred to the elements of incorporation by reference explicitly and demonstrated for the jury how the evidence failed to satisfy each of the three requirements. Opp. at 17-18. Instead, Mr. Schwimmer made general arguments that allegedly were not persuasive to the jury. However, such a tactical decision cannot form the basis of a legal malpractice suit. There are no allegations that Mr. Schwimmer underprepared for closing arguments, or that he failed to address a crucial issue. Instead, he decided to emphasize the fairness of the General Terms and JPM's attempt to enforce them by sneaking them into the agreement without the Plaintiff noticing. It is quite possible that a more technical analysis of the elements of incorporation by reference would have been more persuasive to the jury, but second-guessing such a decision is not permitted in a legal malpractice suit. The jury was informed about the elements of incorporation by reference through the jury instruction, and so it was reasonable for Mr. Schwimmer to focus on other arguments against the application of the General Terms. Mr. Schwimmer dutifully prepared for the closing arguments, and he focused on the admittedly crucial issue of the General Terms and the possibility that they were incorporated by reference. The Court finds that his arguments satisfied the duty of care owed to the Plaintiff, and thus summary judgment is granted to the Defendants on the issue of the closing arguments.[4]

### C. Overbilling of the Plaintiff

Finally, the Plaintiff contends that the Defendants committed legal malpractice or a breach of fiduciary duty by overbilling the Plaintiff for their work on the JPM case. Initially, the Plaintiff alleged in his Complaint that the Defendants generally overbilled him, and pointed to the Defendants' use of a second chair at trial as an example of such overbilling. Complaint at ¶ 17. After the Defendants justified the use of a second chair at trial in its Motion for Summary Judgment, MSJ at 21-22, the Plaintiff apparently abandoned any argument related to the second chair in his Opposition. Opp. at 14-17. Instead, the Plaintiff argues that the Defendants overbilled him because their bills were far out

---

[4] Because the Court finds that the Defendants did not breach their duty of care owed to the Plaintiff in their closing arguments, it does not reach the issue of whether such a breach would have altered the outcome of the action.

Initials of Preparer      PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-02547-SVW-AS | Date | February 7, 2017 |
|---|---|---|---|
| Title | *Jerome Dahan v. Sussman Shank, LLP; John Schwimmer* | | |

of proportion with the amount at stake in the action and because the Defendants improperly assigned tasks and spent too long on tasks. *Id.*

Overbilling can support a claim for malpractice or breach of fiduciary duty, as charging an excessive and unlawful fee breaches the ethical duties of good faith and fidelity and thus amounts to legal malpractice. *Schultz*, 27 Cal.App.4th at 1621 (citing *Lysick v. Walcom*, 258 Cal.App.2d 136, 150-53 (1968)). Therefore, if the Plaintiff can show that the Defendants charged him an excessive and unlawful fee, he can succeed on his claims for legal malpractice and breach of fiduciary duty.

The Court finds there is a factual dispute regarding whether the Defendants overbilled the Plaintiff for their work on the JPM case. Although the Defendants put forward compelling reasons for the decisions they made with regards to hours worked and rates charged to the Plaintiff, such arguments do not justify a finding as a matter of law that the Plaintiff was not overbilled. The reasonableness of the hours worked on particular tasks and the amount of the overall fees is a question for the jury. As specific examples of overbilling, the Plaintiff points to an associate who billed an unreasonable number of hours, considering the tasks he or she was undertaking. For instance, the associate billed 45 hours preparing proposed jury instructions, which the Plaintiff contends was far too many for the type of work involved. Also, Mr. Schwimmer, the head partner on the JPM action, billed for tasks properly done by a more junior attorney, such as document review and discovery requests or responses. The Court cannot find as a matter of law that these instances, among others, do not constitute overbilling.

However, the Court notes that the Plaintiff has not demonstrated that overall fees that are out of proportion with the amount at stake in the action can sustain a legal malpractice claim. The only case cited by the Plaintiff to support this contention is a marriage dissolution case from 1978 that involved a claim for reasonable attorneys' fees in connection with a default judgment. *See In re Marriage of Cueva*, 86 Cal.App.3d 290, 302 (1978). The Court of Appeal reversed the award of attorney fees because the record of services provided by the attorney did not support the award. In discussing how many hours constituted "reasonable value" of an attorney's services, the court noted that the amount of hours is not the only measure of the value of an attorney's time, as time spent may be entirely disproportionate to the result to be achieved. *Id.* The Plaintiff cites that statement as support for his contention that disproportionate fees may constitute legal malpractice. Clearly *Cueva* is not applicable to the current case, and the Plaintiff cites no other authority for his argument that a simple showing of fees that were out of proportion to the potential result could constitute legal malpractice. Thus, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:16-cv-02547-SVW-AS | Date | February 7, 2017 |
| Title | *Jerome Dahan v. Sussman Shank, LLP; John Schwimmer* | | |

Court finds that in order to demonstrate malpractice the Plaintiff must show why the hours worked by the Defendants or the rates charged by the Defendants for specific tasks within the litigation constituted overbilling.

Finally, the Court notes that after this Order this case has become solely about the fees charged by the Defendants. The Plaintiff contends that the Defendants overbilled him, while the Defendants have brought counterclaims against the Plaintiff in order to recover unpaid fees. The Court believes that such a fee dispute does not warrant the trial within a trial usually required in run of the mill malpractice actions. Therefore, the parties should submit supplemental briefing that discusses how this case should proceed in an efficient manner, given that the only remaining claims by both parties relate solely to fees.

### V. ORDER

For the foregoing reasons, the Court GRANTS in part and DENIES in part the Defendants' Motion for Summary Judgment. The Motion is DENIED with regards to the statute of limitations issue, as a factual dispute remains regarding the end date of the attorney-client relationship. The Motion is GRANTED with regards to the Plaintiff's claims involving the Defendants' closing arguments. The Motion is DENIED with regards to the Plaintiff's claims for overbilling. The Parties should submit further briefing, no longer than 6 pages in length, within 14 days of the issuance of this Order describing the parties' preferred method of proceeding to trial, given that the case now solely involves the reasonableness of the fees charged to the Plaintiff by the Defendants.

IT IS SO ORDERED.

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |